# EXHIBIT A

# MANAGEMENT AGREEMENT

**THIS MANAGEMENT AGREEMENT** is made and entered into as of the 8th day of August, 2016, by and between Charter Schools USA at Berkeley, LLC., license to do business in South Carolina ("CSUSA"), and Berkeley Charter Education Association, Inc., doing business as Mevers Berkeley School of Excellence, a South Carolina non-profit corporation (the "Charter School").

## RECITALS

**WHEREAS,** the Charter School has an approved charter application (the "Charter Application") for the operation of Mevers Berkeley School of Excellence located at TBD_ to the South Carolina Public Charter School District (the "Sponsor") to operate a public charter school; and

**WHEREAS,** the Charter School has determined that it is in its best interest to contract with a qualified and competent educational service provider to operate the Charter School; and

**WHEREAS,** CSUSA is in the business of developing, managing, staffing, and operating public charter schools for non-profit boards; and

**WHEREAS,** the Charter School wishes to hire CSUSA, and CSUSA wishes to be hired by Charter School to manage and operate the Charter School upon the terms and conditions set forth herein; and

**NOW, THEREFORE,** for mutual and valuable consideration, the receipt and adequacy of which is hereby acknowledged, the parties agree with each other as follows:

## ARTICLE I
## CONTRACTING RELATIONSHIP

**A.    Authority.** The Charter School represents that it is authorized by law to contract with CSUSA and for CSUSA to provide educational management services to the Charter School. The Charter School further represents that it has a Charter Application which has been approved by the Sponsor to organize and operate a public charter school. The Charter School either has already or will enter into a charter contract with the Sponsor (the "Charter Contract"). The Charter School is therefore authorized by the Charter Application, Charter Contract and the Sponsor to supervise and control such charter school, and is invested with all powers necessary or desirable for carrying out the educational program contemplated in this Agreement.

**B.    Agreement.** The Charter School hereby contracts with CSUSA, to the extent permitted by law, for the provision of all labor and supervision necessary for the provision of educational services to students, and the management, operation and

maintenance of the Charter School in accordance with the educational goals, curriculum, methods of pupil assessment, admission policy and criteria, school calendar and school day schedule, age and grade range of pupils to be enrolled, educational goals, and method to be used to monitor compliance with performance of targeted educational outcomes, all as adopted by the Charter School's Board of Directors (the "Board") and included in the Charter Contract between the Charter School and the Sponsor. CSUSA's obligations to the Charter School shall be only as expressly set forth in this Agreement. Duties required to be carried out for the operation of the Charter School which are not expressly set forth herein as being CSUSA's responsibility shall remain the Board's sole responsibility.

      C.     **Designation of Agents.** The Board designates the employees of CSUSA as agents of the Charter School having a legitimate educational interest such that they are entitled to access to educational records under 20 U.S.C. §1232g, the Family Rights and Privacy Act ("FERPA") and other applicable law. The Board, subject to its discretion, hereby authorizes CSUSA to communicate with and negotiate on the Board's behalf with all state and governmental agencies, as directed by the Board.

      D.     **Status of the Parties.** CSUSA is a Florida limited liability company, and is not a division or a part of the Charter School. The Charter School is a South Carolina, non-profit corporation or a Limited Liability Corporation with 501(c) (3) IRS designation (pending) authorized by the Charter Contract, and is not a division or part of CSUSA. The parties to this Agreement intend that the relationship created by this Agreement is that of an independent contractor and does not create an employer employee relationship. Except as expressly provided in this Agreement, no agent or employee of CSUSA shall be deemed to be the agent or employee of the Charter School. CSUSA shall be solely responsible for its acts and the acts of its agents, employees and subcontractors. The relationship between CSUSA and the Charter School is based solely on the terms of this Agreement, and the terms of any other written agreements between CSUSA and the Charter School.

## ARTICLE II
## TERM

This Agreement shall be effective as of the date first written above and shall continue for an initial term consistent with the term of the Charter Contract unless terminated or cancelled earlier in accordance with this Agreement, or for good cause, as agreed by CSUSA and the Charter School. After the initial term, then the term of the Agreement shall be extended (i) to the extent CSUSA performs in accordance with the terms of this Agreement, (ii) in the event that the Charter Contract is extended or replaced, or (iii) in the event the Board approves the extension by express vote. The term of the extension of the Agreement shall correspond to the length of the Charter Contract unless this Agreement is otherwise terminated or cancelled earlier in accordance with this Agreement, or for good cause, as agreed by CSUSA and the Charter School. Nothing contained in this Agreement shall be construed to restrict or prevent the Charter School from entering into a Management Agreement with any other party for any school other than the Charter School that is the subject of this Agreement.

# ARTICLE III
# FUNCTIONS OF CSUSA

   A.   **Responsibility.** CSUSA shall be responsible and accountable to the Board for the operation and performance of the Charter School in accordance with the Charter Contract. CSUSA's responsibility is expressly limited by: (i) the Charter School's Annual Budget, which is to be submitted and approved by the Board as provided in this Agreement, and (ii) the availability of state funding to pay for said services. Neither CSUSA nor the Charter School shall be required to expend Charter School funds on services in excess of the amount set forth in the Charter School's Annual Budget. There is nothing in the Agreement which shall delegate the ultimate authority of the Charter School.

   B.   **Educational Program.** CSUSA agrees to implement the Educational Program. The Educational Program curriculum and related methods and materials are proprietary to CSUSA. In the event CSUSA determines that it is necessary to modify the Educational Program, CSUSA shall inform the Board of the proposed changes and obtain Board approval, and if required under the Charter Contract, approval of the Sponsor. The parties hereto acknowledge that an essential principle of the Educational Program are their flexibility, adaptability and capacity to change in the interest of continuous improvement and efficiency, and that the Charter School and CSUSA are interested in results and not in inflexible prescriptions. Not less than annually, and otherwise as requested, CSUSA will provide the Board with updated reports on progress towards implementing each of the Charter School's educational goals in the Educational Program.

   C.   **Specific Functions.** CSUSA shall be responsible for the management, operation, accounting and Educational Program at the Charter School. Such functions include:

   1.   Perform day-to-day management of the Charter School, in accordance with this Agreement, the non-profit purpose of the Charter School, the Charter Contract and subject to the direction given by the Charter School;

   2.   Implement and administer the Educational Program, including the selection of instructional materials, personnel, equipment, technology and supplies, and the administration of extra-curricular and co-curricular activities and programs approved by the Charter School. Perform repeated evaluation, assessment and continuous improvement of the educational curriculum and program development and report findings to the Charter School upon its request;

   3.   Management, selection, and application of technology services required to facilitate operation of the school;

4. Manage personnel functions, including professional development for the Charter School Administrator and instructional personnel and the personnel functions outlined in Article VI of this Agreement including drafting operations manuals, forms (including teacher offer letters, applications, enrollment and similar forms), and management procedures, as the same are from time to time developed by CSUSA and as approved or requested by the Charter School;

5. Management of the business administration of the Charter School;

6. Management of the accounting operation, including general ledger management and financial reporting including identifying and applying for non-competitive grants (competitive grants may include fees for application preparation and ongoing management for reporting and compliance), spending and administering any associated grant funding obtained in compliance with the specific terms and conditions of said grants and participating in any audits related thereto, and preparing the proposed annual budget for presentation to the Charter School for modification, amendment or approval; provided that any modifications or amendments shall be approved by express vote of the Charter School and be consistent with the staffing and educational models set forth in the Charter Contract, and that CSUSA will abide by any express spending instructions given by Charter School, and authorized by its Board, at any time; and,

7. Any other function necessary or expedient for the administration of the Charter School pursuant to the Charter Contract.

**D.     Purchases.** Purchases made by CSUSA on behalf of the Charter School with the Charter School's funds, such as non-proprietary instructional and/or curriculum materials, books and supplies, and equipment will be the property of the Charter School. CSUSA shall own all proprietary rights to, and the Charter School's proprietary interest shall not include, curriculum or educational materials that are developed or copyrighted or similarly protected by CSUSA, including without limitation curriculum or educational materials that are developed by CSUSA with funds from the Charter School. CSUSA's educational materials and teaching techniques used by or at the Charter School shall be subject to disclosure to the extent required by law. This provision does not apply to any capital items leased or purchased by CSUSA with CSUSA's own funds.

**E.     Subcontracts.** CSUSA shall not subcontract the management, oversight or operation of the teaching and instructional program, except as specifically permitted in this Agreement or with approval of the Board. CSUSA reserves the right to subcontract any and all aspects of all services it agrees to provide to the Charter School.

**F.  Place of performance.** CSUSA reserves the right to perform functions other than instruction, such as purchasing, professional development, and administrative functions, off-site, unless prohibited by state or local law.

**G.  Ongoing Student Recruitment.** CSUSA shall develop and manage ongoing recruitment of students subject to general recruitment and admission policies of the Charter School. Students shall be selected in accordance with the procedures set forth in the charter Contract and in compliance with applicable laws. CSUSA shall present a plan to the Charter School to solicit and recruit enrolment of students by various means, which may include but shall not be limited to the following: paid and unpaid media advertisements in a newspaper of general circulation, mailings to parents/guardians of prospective students, word-of-mouth and presentations to interested groups and distribute information through advertisements.

**H.  Due Process Hearings.** CSUSA shall, at the Board's direction, provide student due process hearings in conformity with the requirements of state and federal law regarding discipline, special education, confidentiality and access to records, to an extend consistent with the Charter School's own obligations, and if necessary retain counsel on behalf of the School. The Board shall retain the right to provide due process as required by law.

**I.  Legal Requirements.** CSUSA shall provide Educational Programs that meet federal, state, and local requirements, and the requirements imposed under applicable laws and the Charter Contract, unless such requirements are or have been waived.

**J.  Rules and Procedures.** CSUSA shall recommend reasonable rules, regulations and procedures applicable to the Charter School and is authorized and directed to enforce such rules, regulations and procedures adopted by the Charter School.

**K.  School Year and School Day.** The school year and the school day shall be as required by law and as determined annually by the Board.

**L.  Pupil Performance Standards and Evaluation.** CSUSA shall be responsible and accountable to the Board for the performance of students who attend the Charter School. CSUSA will utilize assessment strategies required by the terms of the Charter Contract. The Board and CSUSA will cooperate in good faith to identify measures of and goals for Charter School students and school performance, including but not limited to academic achievement and parent satisfaction. CSUSA shall perform its duties and responsibilities as set forth in this Agreement to the reasonable satisfaction of the Board.

**M.  Services to Disabled Students and Special Education.** CSUSA shall provide special education services to students who attend the Charter School in conformity with the requirements of state and federal law. CSUSA may subcontract as necessary and appropriate for the provision of services to students whose special needs cannot be met within the Charter School's program, subject to approval of the Board. Such services shall be provided in a manner that complies with local, state and federal laws and applicable

regulations and policies. Consistent herewith, the Board acknowledges the individualized nature of services that may need to be provided to disabled and special needs students and the impact that the provision of such individualized services may have on the Annual Budget. The Board and CSUSA mutually agree to adjust the Annual Budget as deemed necessary with respect to the provision of services to disabled and special needs students under this paragraph, as required by law.

    **N.**    **Contract between the Charter School and the Sponsor.** CSUSA will not act in a manner that will cause the Charter School to be in breach of its Charter Contract with the Sponsor.

    **O.**    **Unusual Events.** CSUSA agrees to timely notify the Board and/or school administrator of any anticipated or known: (i) material health or safety issues, (ii) labor, employee or funding problems, or (iii) problems of any other type that could adversely affect the Charter School in complying with its responsibilities hereunder or its responsibilities under the Charter Contract.

    **P.**    **Student and Financial Records.** All student and financial information related to the Charter School shall be available for inspection at the Charter School upon reasonable request consistent with applicable federal and state laws.

    **Q.**    **Charter School Records/Proprietary.** The financial, educational and student records pertaining to the Charter School are Charter School property, and such records are subject to the provisions of the applicable freedom of information act(s) to the extent required by applicable law. All Charter School records shall be physically or electronically available, upon request, at the Charter School. Except as prohibited under the Charter Contract and applicable law, the Sponsor and the public shall have access to the Charter School's records.

    **R.**    **CSUSA Performance Goals.**

a)     Timely submission of required reports set forth in this Agreement;

b)     Strict adherence to the approved Annual Budget for the operation and management of the Charter School, with no aggregate cost over-runs; and

c)     Such performance goals contained within the Charter Contract and the Charter Application

    **S.**    **Educational and Other Services.** Upon Board approval, CSUSA shall provide certain educational and other services. Such services may include but are not limited to certain technology services, proprietary curriculum and other instructional tools as well as school development services which may be provided by CSUSA, its affiliates or third party entity.

## ARTICLE IV
## OBLIGATIONS OF THE BOARD

**A.     Good Faith Obligation.** The Board shall be responsible for its fiscal and academic policy. The Board shall exercise good faith in considering the recommendations of CSUSA, including but not limited to, CSUSA's recommendations concerning policies, rules, regulations and budgets. If the Board's unwillingness to adopt CSUSA's reasonable recommendations with respect to policies, rules, and regulations specifically inhibits CSUSA's ability in implementing the school design as set forth in the Charter Application, CSUSA shall have the option of terminating this Agreement. Any material changes to the Board's bylaws may be grounds for termination by CSUSA to the extent those changes create obligations for CSUSA without prior approval.

**B.     Assistance to CSUSA.** The Charter School shall cooperate with CSUSA in furnishing all information and submitting all forms and reports required in association with this Agreement, including timely notice of all Board meetings. The Charter School shall timely furnish CSUSA all documents and records necessary for CSUSA to properly perform its responsibilities under this Agreement. Governing Board members will comply with mandated compliance requirements and remain current with all such requirements throughout the duration of this agreement.

**C.     Unusual Events.** The Charter School agrees to timely notify CSUSA of any anticipated or known: (i) material health or safety issues, (ii) labor, employee or funding problems, or (iii) problems of any other type that could adversely affect CSUSA in complying with its responsibilities hereunder.

**D.     Retained Authority.** The Board shall retain the authority to make reasonable regulations relative to anything necessary for the proper establishment, maintenance, management, and carrying on of the Charter School, including regulations relative to the conduct of pupils while in attendance at the Charter School or en route to and from the Charter School.

**E.     Food Service.** The Charter School shall be managed, operated and administered by or shall otherwise provide authority to CSUSA to manage, operate and administer the Food Service for the Charter School including but not limited to cause all conditions necessary to satisfy all requirements of the Federal Statutes regarding the National School Lunch Program at 7 C.F.R. §210.1, et seq.

## ARTICLE V
## FINANCIAL ARRANGEMENTS

**A.     Revenues.** Except as hereinafter provided, all monies received by the Board shall be deposited in the Charter School's depository account with a financial

605337v1 980058.0001
DM: 4603934 v.1

7

institution acceptable to the Board and CSUSA. The signatories on the account shall only be the Board members or designees of the Board, or designated CSUSA employees designated by the Board. Interest income earned on Charter School depository accounts shall accrue to the Charter School. Except as specifically excluded by the terms of this Agreement, the term "Revenues" shall include all funds received by or on behalf of the Charter School, including but not limited to:

1. Funding for public school students enrolled in the Charter School.

2. Special education funding provided by Federal, State and Local Governments to the Charter School that is directly allocable to special education students in the Charter School.

3. Gifted and Talented funding provided by Federal, State and Local Governments that is directly allocable to Gifted and Talented students in the Charter School.

4. At-Risk Funding provided by Federal, State and Local Governments to the Charter School that is directly allocable to At-Risk students in the Charter School.

5. Funding provided by Federal, State and Local Governments to the Charter School that is directly allocable to students in the Charter School with limited English proficiency.

6. Federal, State and Local grant sources, including Title I and Charter School startup funds, which is directly allocable to the Charter School.

7. Governmental grants received by the Charter School (except to the extent CSUSA is not required or involved in soliciting, administering, or managing such grants and/or donations).

8. Fees charged to students and others for extra services as and to the extent permitted by law (all of the above are hereinafter collectively referred to as the "Revenues"). Non-governmental grants and donations received by, and separately procured by, the Charter School shall not be considered Revenues.

The Board may advance funds to CSUSA for the fees or expenses associated with the Charter School's operation provided that documentation for the fees and expenses are provided for Board ratification. The Revenues shall be expended by CSUSA in accordance with the approved Budget and as otherwise authorized by the Board. The expenditure of Revenues received from governmental entities shall be consistent with all applicable regulations and policies, and in the case of private donations, the directives of the donor where applicable. To the extent that there are not sufficient funds in the Operating Account to pay Operating Expenses (excluding fees to CSUSA under this Agreement), CSUSA

may, at CSUSA's option, deposit funds into the Charter School Operating Accounting ("Operating Advances"). Operating Advances can only be made in accordance with the approved Annual Budget. The Charter School shall reimburse CSUSA all Operating Advances, together with interest earned thereon from Total Revenues as and when the funds become available; provided, however, that if at the end of each Fiscal Year Total Revenues, after payment of Debt Service and Operating Expense, are insufficient to reimburse all Operating Advances attributable to such Fiscal Year, CSUSA may forgive the un-reimbursed balance of Operating Advances, including interest earned thereon. At all times, any advances issued by CSUSA shall be made only with the consent of Charter School.

  **B.** **Budget.** CSUSA shall manage the budget, accounting, and financial reporting functions for the Charter School in accordance with the Requests of the Sponsor, the provisions of the Charter Contract and the approved Annual Budget by the Board. Charter School must maintain sufficient funds in its budget for independent legal counsel, an independent auditor, and sufficient funds to hire staff or other consultants necessary to oversee the performance of the School.

  CSUSA shall prepare and submit to the Charter School for its approval for each Fiscal Year (July 1-June 30), an Annual Budget for the Charter School. Each Annual Budget shall state an estimate for the coming Fiscal Year for (i) Total Revenues; (ii) Operating Expenses; (iii) Reserve Expenses; (iv) Audit Expenses; and (v) Fund Balance.

  Reserve Expenses means the amount of money reflected in the Annual Budget that CSUSA must deposit into an account for Reserve Expenses. The Reserve Expense Account shall be used for the establishment of reasonable reserves for long-term renewal and replacement of the School Facility or portions thereof. CSUSA shall obtain approval from the Charter School to withdraw funds from the Reserve Expense Account. There shall be a goal of 1% of funding per year for both the reserve and fund balance.

  (i) CSUSA shall submit to the Charter School for its review and approval a preliminary Annual Budget for each Fiscal Year for the Charter School, on or before June 30th of the current Fiscal Year. It is the intent of this provision that CSUSA prepare and submit to the Charter School a balanced Annual Budget, which shall provide for full payment of the (i) Total Revenues; (ii) Operating Expenses; (iii) Reserve Expenses, (iv) Audit Expenses and (v) Fund Balance with respect to the Charter School.

  (ii) The Charter School must notify CSUSA in writing that it approves the Annual Budget within thirty (30) days of submission by CSUSA, which approval shall not be unreasonably withheld or delayed. If the Charter School does not approve the Annual Budget, the Charter School shall give specific reasons therefore and continue to deposit the balance of Total Revenues into the Charter School Operating Account pursuant to its obligations in Article V. If the Charter School does not approve the Annual Budget within thirty days of submission by CSUSA, Charter School shall be deemed to approve the Annual Budget. CSUSA and the Charter School acknowledge that a Final Budget shall be completed no later than August 1st.

(iii)   CSUSA may amend the Annual Budget(s) not less frequently than semi-annually in order to reflect the results of the most recent student count and may make such other modifications as it may from time to time find necessary. Any such amendment shall only be valid if approved by the express vote of the Board. CSUSA shall report any changes upon which the Annual Budget was based within fifteen days after CSUSA becomes aware of any such change.

(iv)   CSUSA shall operate and manage the Charter School according to its Annual Budget.

(v)   CSUSA shall use reasonable efforts to operate the Charter School within its Annual Budget.

C.   **Compensation.** CSUSA shall receive compensation (the "**compensation**") in the amounts specified in Exhibit "A" hereto, payable monthly in arrears in substantially equal monthly installments during such year. The compensation shall be consistent with all applicable law and regulation. To the extent any compensation shall be unpaid at the end of any (past and future) Fiscal Year, such unpaid compensation shall be deferred and due when the School has available net operating revenue.

D.   **Availability of Funds.** CSUSA shall only be required to perform its responsibilities under this Agreement to the extent that there are sufficient Revenues to make payments in accordance with the terms of the Budget.

E.   **Financial Reporting.** CSUSA shall provide the Board with:

1.  The projected Annual Budget as required by the terms of this Agreement.

2.  Detailed statements of all Revenues received, and detailed statements of all expenditures for services and or expenses rendered or incurred to or on behalf of the Charter School, whether incurred on-site or off-site, upon request.

3.  Financial statements by the 30th day of the following month as required by law or charter contract, including a balance sheet and statement of revenues and expenditures.

4.  Other information on a periodic basis to enable the Board to (i) monitor CSUSA's performance and the efficiency of its operation of the Charter School, and (ii) furnish reports and information which the Charter School is required to provide pursuant to its Charter Contract and/or applicable laws.

F.   Audit.

1.  Charter School's board will select and retain an independent

accounting ("Independent Auditor") firm to perform an annual financial audit.
   2. CSUSA Records related to Charter School management will be available to Independent Auditor.
   3. CSUSA shall cooperate with Independent Auditor in its preparation of annual audit.

  **G.** **Access to Records.** CSUSA shall keep accurate financial records pertaining to its operation of the Charter School, together with all Charter School financial records prepared by or in possession of CSUSA, and shall retain all of the said records for a period of time as may be required by the Charter Contract. CSUSA and the Charter School shall maintain the proper confidentiality of personnel, students, and other records as required by law.

  **H.** **Review of Operational Budget.** The Board shall be responsible for reviewing and approving the Annual Budget of the Charter School as presented by CSUSA.

  **I.** **Annual Audit.** The Board shall select and retain an independent auditor, to conduct an annual audit of the Charter School in accordance with the Charter School's authorizing documents. Subject to applicable law, all finance and other records of CSUSA related to the Charter School will be made available to the Charter School's independent auditor.

  **J.** **Start-up Operating Losses.** With Charter School approval, CSUSA may, in its sole discretion, provide funds for operating losses for the Charter School during the startup period. CSUSA advances shall be budgeted and shall be in amounts acceptable to CSUSA. CSUSA shall be reimbursed from the Revenues as and when funds are available. Advances shall not be made for the fees comprising Compensation on Exhibit A.

  **K.** **Marketing.** Marketing and development costs paid by or charged to the Charter School shall be limited to those costs specific to the Charter School program and may include costs for the marketing and development of the Charter School.

## ARTICLE VI
## PERSONNEL & TRAINING

  **A.** **Personnel Responsibility.** CSUSA shall select and hire qualified personnel to perform services at the Charter School. Personnel shall be employees of CSUSA, unless otherwise agreed by CSUSA and the Board. Each party shall be responsible for all compensation for their respective employees. The compensation of all employees will be paid in accordance with the approved Annual Budget referenced in Article V of this Agreement. CSUSA shall have the responsibility and authority to determine staffing levels, and to select, evaluate, assign, discipline, transfer and terminate personnel consistent with state and federal law.

  **B.** **School Administrator.** The accountability of CSUSA to the Charter School is an essential component of this Agreement. Since the responsibility of the School

Administrator is critical to the Charter School's success, CSUSA shall have the authority, consistent with state law, to select and supervise each School Administrator and to hold the School Administrator accountable for the success of the Charter School. CSUSA shall consult with the Board with respect to the hiring of the School Administrator, and CSUSA shall remove the School Administrator from the Charter School if the Board is reasonably dissatisfied with his or her performance.

**C.     Teachers.** CSUSA shall determine the number of teachers, and the applicable grade levels and subjects, required for the operation of the Charter School. CSUSA shall provide the Charter School with such teachers, qualified in the grade levels and subjects required, as are required by the Charter School. The curriculum taught by such teachers shall be consistent with the Educational Program. Such teachers may, in the discretion of CSUSA, work at the Charter School on a full or part time basis. If assigned to the Charter School on a part time basis, such teachers may also work at other schools managed or operated by CSUSA. Each teacher assigned to the Charter School shall have such credentials, certifications and experience as may be required under the Charter Contract and applicable laws and shall undergo a criminal background check as if such teacher was employed by the Charter School.

**D.     Support Staff.** CSUSA shall determine the number and the functions of support staff required for the operation of the Charter School. CSUSA shall provide the Charter School with qualified staff to efficiently operate the Charter School in accordance with the Charter Contract. The support staff may, in the discretion of CSUSA, work at the Charter School on a full or part time basis. If assigned to the Charter School on a part time basis, the support staff may also work at other schools managed or operated by CSUSA.

**E.     Training.** CSUSA shall provide training in its methods, curriculum, program, and technology to all teaching personnel on a regular basis. Instructional personnel shall receive at least the minimum hours of professional development required by applicable laws. Non-instructional personnel shall receive such training as CSUSA determines reasonable and necessary under the circumstances.

**F.     Limitations on Discretion.** All decisions made by CSUSA, and any discretion exercised by CSUSA, in its determination of staffing levels and its selection, evaluation, assignment, discipline, and transfer of personnel, shall be consistent with the approved Annual Budget, local, state and federal law, and consistent with the parameters adopted by the board and included within the Educational Program.

## ARTICLE VII
## DEFAULT

A.     **Default.** An event of default ("Event of Default") by either party shall be limited to the following:

1.     The Charter School fails to make any payment due hereunder within ten

       (10) days after the date such payment was due.

2. The Charter School materially breaches any of its other obligations under this Agreement and fails to cure such material breach within sixty (60) days after notice of such breach.

3. If CSUSA shall under such law as shall be applicable to it commence any case or proceeding, or file any petition in bankruptcy, or for reorganization, liquidation or dissolution, or be adjudicated, insolvent or bankrupt, or shall apply to any tribunal for a receiver, intervener, conservator or trustee for itself or for any substantial part of its property; or if there shall be commenced against it any such action and the same shall remain un-dismissed for more than sixty (60) days.

4. If CSUSA is found by an administrative or judicial body to have made fraudulent use of funds, or if an administrative or judicial body has revoked any license that may be required for CSUSA to carry on its business and perform its obligations and functions under this Agreement.

5. If CSUSA materially breaches this Agreement. Material Breach includes (i) failure to account for its expenditures or pay the Charter School's operating costs (provided funds are available to do so), (ii) failure to follow policies, procedures, rules or curriculum duly adopted by the Board which is not in violation of this Agreement or the law, or (iii) insufficient progress has made in attaining student achievement objectives of the Agreement and the Charter Contract, and it is not likely that such objectives can be achieved before expiration of this Agreement, (iv) if the health, safety, or welfare of the students is threatened, (v) violation of law, (vi) the revocation, suspension or termination of licenses/certifications needed for any Charter School operations solely as direct result of an act or failure to act by CSUSA, and (vii) the revocation by the sponsor of the Charter Contract solely as the direct result of an act or failure to act CSUSA. In the event of a material breach, CSUSA shall have (60) days after receipt of written notice to remedy said breach.

    **B.** **Remedies.** Upon the occurrence of an uncured Event of Default by either party, the non-breaching party shall be entitled to pursue all remedies available under law or equity, including without limitation, terminating this Agreement upon seven (7) days prior written notice. In the event of termination of this Agreement for any reason by either party prior to the end of this Agreement's term, CSUSA may, for a fee reasonably acceptable to CSUSA, provide the Charter School reasonable assistance for up to thirty (30) days to assist in the transition to another administrative or structural arrangement (although CSUSA shall not be required to provide any assistance to another management company or service provider). However, CSUSA will abide by all state laws that govern transition obligations, including but not limited to:

- Transfer to such entity of all student records;
- Transferring any and all other non-proprietary information and providing necessary assistance to the new program or education service provider to ensure the least disruption of the Charter School operation as a result of the termination of this agreement;
- Transferring and/or assigning to the Charter School all contracts, agreements, licenses, permissions, and other rights and privileges related to the operation of the Charter School; including, at CSUSA's option, assignment of contracts for Personnel.

## ARTICLE VIII
## INDEMNIFICATION

Each party to this Agreement does hereby indemnify and hold harmless the other, and the Sponsor, and their respective boards of directors, partners, officers, employees, agents, representatives, and attorneys from and against any and all claims, actions, damages, expenses, losses or awards which arise out of (i) its negligence, (ii) its action taken or not taken, or (iii) its noncompliance or breach of any of the terms, conditions, warranties, representations, or undertakings contained in or made pursuant to this Agreement. As used in this subsection, "party" shall include the party's trustees, directors, officers, employees, agents, representatives and attorneys. Such indemnification may be achieved by the joint purchase of general liability and property insurance policies, or by such other means as the parties may mutually agree.

## ARTICLE IX
## INSURANCE

**A.    Insurance Coverage.**  Each party shall maintain such insurance in the coverage amounts as may be required by the Charter Contract, with the other party listed as an additional insured. Revenues from the Charter School will be used to purchase insurances defined in the Charter Contract to operate the Charter School, including the provision of Directors & Officers Liability insurance for the Board. Each party shall, upon request, present evidence to the other that it maintains the requisite insurance in compliance with the provisions of this paragraph. Each party shall comply with any information or reporting requirements required by the other party's insurers, to the extent reasonably practicable.

**B.    Workers' Compensation Insurance.**  Each party shall maintain workers' compensation insurance as required by the Charter Contract and applicable laws, covering their respective employees.

## ARTICLE X
## WARRANTIES AND REPRESENTATIONS

  **A.** **Charter School Warranties and Representations.** The Charter School represents that it has the authority under law to execute, deliver and perform this Agreement and to incur the obligations provided for under this Agreement. The Board warrants that its actions have been duly and validly authorized, and that it will adopt any and all resolutions or expenditure approvals required for execution of this Agreement.

  **B.** **CSUSA Warranties and Representations.** CSUSA warrants and represents that it is a limited liability company authorized to conduct business in the State of South Carolina. CSUSA will comply with all registration and licensing requirements relating to conducting business under this Agreement. The Charter School agrees to assist CSUSA in applying for such licenses and permits and in obtaining such approvals and consents.

  **C.** **Mutual Warranties.** The Charter School and CSUSA mutually warrant to the other that there are no pending actions, claims, suits or proceedings, to its knowledge, threatened or reasonably anticipated against or affecting it, which if adversely determined, would have a material adverse effect on its ability to perform its obligations under this Agreement.

**ARTICLE XI**
**MISCELLANEOUS**

  **A.** **Sole Agreement.** This Agreement supersedes and replaces any and all prior agreements and understandings between the Charter School and CSUSA.

  **B.** **Force Majeure.** Notwithstanding any other sections of this Agreement, neither party shall be liable for any delay in performance or inability to perform due to acts of God or due to war, riot, embargo, fire, explosion, sabotage, flood, accident, labor strike, or other acts beyond its reasonable control; provided either party may terminate this Agreement in accordance with the termination provisions contained in this Agreement if sufficient grounds exist as provided in the Article of this Agreement governing termination.

  **C.** **State Governing Law/Waiver of Jury Trial.** The rights of all parties hereto shall be subject to the jurisdiction of and be construed according to the laws of the State of South Carolina, and subject to venue in the jurisdiction where the Charter School is located. CSUSA and the Charter School hereby waive the right to a jury trial in any action, proceeding or counterclaim brought by either CSUSA or the Charter School against the other.

  **D.** **Agreement in Entirety.** This Agreement is intended to conform to the obligations and requirements of the Charter School Contract between Charter School and Sponsor, and this Agreement is hereby modified to incorporate or alter any provision required to accomplish that purpose. As so modified, this Agreement constitutes the entire agreement of the parties.

     **E.**    **Official Notices.** All notices and other communications required by the terms of this Agreement shall be in writing and sent to the parties hereto at the facsimile number or address set forth below. Notice may be given by: (i) by facsimile with written evidence of confirmed receipt by the receiving party of the entire notice, (ii) certified or registered mail, postage prepaid, return receipt requested, or (iii) personal delivery. Notice shall be deemed to have been given on the date of transmittal or personal delivery if given by facsimile or personal delivery, or upon the date of postmark if sent by certified or registered mail. Notices to the Charter School shall be sent to the current address of the then current Board President or Chairman, with a copy to the then current Board attorney. The address of the parties hereto for the purposes aforesaid, inclusive of the address of the initial Board President or Chairman and Board attorney, are as follows:

**Charter School:**
>Dr. Stewart Weinberg, President/Board Chair
>103B Howard Mary Drive
>Charleston, South Carolina, 29412
>Phone: (843) 901-8018

with a copy to:
>Stafford J. McQuillan
>J.W. Matthews, III
>Haynsworth Sinkler Boyd, P.A.
>134 Meeting Street, 3rd Floor
>Charleston, South Carolina 29401
>Phone: (843) 724-1120

**CSUSA:**
>Chairman, Chief Executive Officer
>800 Corporate Drive #124
>Ft. Lauderdale, FL 33334
>Phone: 954-202-3500
>Fax: 954-202-2047

with a copy to:
>Tripp Scott, P.A.
>Attn: Edward J. Pozzuoli
>110 S.E. Sixth Street, 15th Floor
>Fort Lauderdale, FL 33301
>Phone: 954-525-7500
>Fax: 954-761-8475

     **F.**    **Assignment.** Either party may assign this Agreement with the written consent of the other.

  **G.** **Amendment.** This Agreement shall not be altered, amended, modified or supplemented except in writing and approved by the Board and signed by both the President or Chairman of the Board and the CEO of CSUSA.

  **H.** **Waiver.** No waiver of any provision of this Agreement shall be deemed or shall constitute a waiver of any other provision. Nor shall such waiver constitute a continuing waiver unless otherwise expressly stated.

  **I.** **Cost and Expenses.** If any party commences an action against another party as a result of a breach or alleged breach of this Agreement, the prevailing party shall be entitled to have and recover from the losing party its reasonable costs and attorneys' fees (including those incurred at appellate levels).

  **J.** **Delegation of Authority.** Nothing in this Agreement shall be construed as delegating to CSUSA powers or authority of the Board, which are not subject to delegation by the Board under applicable law.

  **K.** **Compliance with Law.** The parties to this Agreement agree to comply with all applicable laws and regulations.

  **L.** **Compliance with Charter Contract.** The parties to this Agreement agree to comply with the terms and conditions set forth in the Charter Contract.

  **M.** CSUSA is not a third party beneficiary of the Charter or the Charter School's contract with Sponsor;

**SIGNATURE PAGE TO FOLLOW**

IN WITNESS WHEREOF, the undersigned have executed this Agreement as of the date and year first above written.

**CSUSA**

By: _____
Name: Jonathan K. Hage
Title: President & CEO
Date: 8-9-2016

**Charter School**

By: _____
Name: Stewart Weinberg, Ph.D.
Title: President/ Board Chairperson
Date: August 8, 2016

## EXHIBIT "A"

## COMPENSATION

| Category | Percentage of Revenue |
|---|---|
| Personnel Management Costs | 3.0% |
| Procurement/Vendor Management Costs | 1.0% |
| Educational Intellectual Property & Curriculum Costs | 4.0% |
| Finance & Accounting Services Costs | 2.0% |
| Support Center General Overhead & Fee | 5.0% |

605337v1 980058.0001
DM: 4603934 v.1

18