# EXHIBIT C

ELECTRONICALLY FILED - 2024 Jul 31 11:00 AM - ANDERSON - COMMON PLEAS - CASE#2024CP0400995

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | TENTH JUDICIAL CIRCUIT |
| COUNTY OF ANDERSON | ) | |
| | ) | CA No. 2024-CP-04-00995 |
| Erskine College, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | **DEFENDANT'S AMENDED ANSWER** |
| Icelaven Development Group LLC, | ) | **AND COUNTERCLAIMS, AND** |
| | ) | **THIRD-PARTY CLAIMS** |
| Defendant. | ) | |
| | ) | **(JURY TRIAL DEMANDED)** |
| And | ) | |
| Reason & Republic, LLC and Icelaven | ) | |
| Development Group LLC, | ) | |
| | ) | |
| Third-Party Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| Erskine College, The Charter Institute at Erskine, | ) | |
| Cameron Runyan, Vamshi Rudrapati, Deidre | ) | |
| McCullough, Jordan McCullough O'Quinn, Patty | ) | |
| Barrett, Michelle Ulsaker, Megan Patterson, | ) | |
| Abby Baine | ) | |
| | ) | |
| Third-Party Defendants | ) | |

Defendant Icelaven Development Group LLC ("Defendant"), by and through undersigned counsel, responding to the Complaint, and amending its original Answer pursuant to SCRCP 15(a), would hereby show the Court as follows:

## FOR A FIRST DEFENSE

1.    Defendant admits the allegations of Paragraphs 1 and 2.

2.    In responding to Paragraph 3, Defendant would show that the Complaint speaks for itself regarding the matters involved in this litigation. Defendant denies that the allegations contained in Paragraph 3 encompass the entirety of the matters involved in this litigation.

ELECTRONICALLY FILED - 2024 Jul 31 11:00 AM - ANDERSON - COMMON PLEAS - CASE#2024CP0400995

3.     In responding to Paragraphs 4-6, Defendant would show that the Note (attached to the Complaint as Exhibit A) speaks for itself. Defendant does not dispute that jurisdiction and venue are proper in this Court. The allegations contained in Paragraphs 4-6 are denied to the extent they allege liability of the Defendant for alleged obligations under the Note.

4.     In responding to Paragraphs 7-9, Defendant would show that the Note speaks for itself. The allegations of Paragraphs 7-9 are denied to the extent they allege liability of the Defendant for alleged obligations under the Note. Defendant specifically denies that it received funds as a loan in accordance with the Note.

5.     Defendant denies the allegations contained in Paragraph 10.

6.     In responding to the allegations contained in Paragraph 11, Defendant admits that it made a $35,000.00 payment on or before December 31, 2022, but denies that this allegation encompasses the full scope of the payments Defendant made to the Plaintiff.

7.     In responding to the allegations contained in Paragraph 12, Defendant admits that it received correspondence from the Plaintiff on December 8, 2023, but denies that this correspondence accurately represents the balance of the Note as alleged.

8.     In responding to the allegations contained in Paragraph 13, Defendant admits that it received correspondence from the Plaintiff on December 8, 2023, but denies that this correspondence accurately represents the balance of the Note or payments due thereunder as alleged. Further answering, Defendant denies all remaining allegations contained in Paragraph 13 not expressly admitted herein.

9.     Defendant denies the allegations contained in Paragraph 14.

10.     Defendant denies the allegations contained in Paragraph 15.

ELECTRONICALLY FILED - 2024 Jul 31 11:00 AM - ANDERSON - COMMON PLEAS - CASE#2024CP0400995

11.    In responding to the allegations contained in Paragraphs 16-17, Defendant craves reference to the correspondence referenced in Paragraphs 16-17. Further answering, Defendant denies the allegations contained in Paragraphs 16-17.

12.    Defendant denies the allegations contained in Paragraph 18.

13.    In responding to Paragraph 19, Defendant acknowledges receipt of the April 14, 2024 correspondence but denies that this correspondence accurately represents the balance of the Note or payments due thereunder as alleged. Further answering, Defendant denies all remaining allegations contained in Paragraph 19.

14.    Defendant denies the allegations contained in Paragraphs 20-21.

15.    In responding to Paragraph 22, Defendant incorporates all previous responses as if restated verbatim herein.

16.    Defendant admits the allegations contained in Paragraphs 23-25.

17.    Defendant denies the allegations contained in Paragraph 26.

18.    In responding to Paragraph 27, Defendant asserts that the terms of the Note speak for themselves. Further answering, Defendant denies the allegations contained in Paragraph 27.

19.    Defendant denies the allegations contained in Paragraphs 28-37.

20.    Defendant denies the allegations contained in the "WHEREFORE" Paragraph.

## AS A SECOND DEFENSE

21.    Defendant reincorporates all previous responses as if restated verbatim herein.

22.    Plaintiff's Complaint fails to state a claim upon which relief can be granted.

## AS A THIRD DEFENSE

23.    Defendant reincorporates all previous responses as if restated verbatim herein.

ELECTRONICALLY FILED - 2024 Jul 31 11:00 AM - ANDERSON - COMMON PLEAS - CASE#2024CP0400995

24.     Plaintiff, by intentionally interfering with Defendant's ability to make payments under the Note, by refusing to acknowledge previous payments, and in other particulars to be shown at trial, breached its obligations under the Note and the implied covenant of good faith and fair dealing so as to preclude its recovery of any sum supposedly due thereunder.

### AS A FOURTH DEFENSE

25.     Defendant reincorporates all previous responses as if restated verbatim herein.

26.     Plaintiff's claims are barred by the doctrine of unclean hands.

### AS A FIFTH DEFENSE

27.     Defendant reincorporates all previous responses as if restated verbatim herein.

28.     To the extent Plaintiff is entitled to any damages, Defendant is entitled to a set-off of these damages due to Plaintiff's own tortious conduct.

### AS A SIXTH DEFENSE

29.     Defendant reserves and does not waive any additional further defense that may be revealed by additional information that may be acquired over the course of discovery or otherwise.

### COUNTERCLAIM AND THIRD-PARTY PLAINTIFF CLAIM[1]

NOW COMES, Third-Party Plaintiff Reason & Republic, LLC ("Reason & Republic"), by way of permissive party joinder pursuant to SCRCP 20(a), and Defendant Icelaven Development Group LLC ("Icelaven"), complaining of the Third-Party Defendants above-named, amending the original Counterclaim and Third-Party Plaintiff Claim pursuant to SCRCP 15(a), allege and would respectfully show the Court as follows:

---

[1] The Counterclaim and Third-Party Plaintiff Claim are referenced collectively herein as the "Counterclaim."

ELECTRONICALLY FILED - 2024 Jul 31 11:00 AM - ANDERSON - COMMON PLEAS - CASE#2024CP0400995

1.      Reason & Republic and Icelaven incorporate herein the relevant and consistent allegations of the preceding paragraphs.

2.      Reason & Republic is a limited liability company organized and existing under the laws of the State of South Carolina with its principal place of business in Anderson County, South Carolina. Plaintiff operates as an educational management company.

3.      Icelaven is a limited liability company organized and existing under the laws of the State of South Carolina, with its principal place of business in Anderson County, South Carolina. Icelaven is an owner of and is the managing member of Reason & Republic.

4.      Third-Party Defendant, Erskine College, is a private college, in Due West, South Carolina, and a South Carolina non-profit corporation ("Erskine"). Erskine is an independent institution of higher learning, as defined in S.C. Code Ann. § 59-113-50.

5.      Third-Party Defendant, The Charter Institute at Erskine, Inc., is a South Carolina non-profit corporation ("CIE"), headquartered in Columbia, South Carolina. CIE was formed by Erskine for the purpose of administering Erskine's chart school sponsorship program.

6.      Third-Party Defendant Cameron Runyan is an individual that upon information and belief, resides in Richland County.

7.      Third-Party Defendant Vamshi Rudrapati is an individual that upon information and belief, resides in Lexington County.

8.      Third-Party Defendants Deidre McCullough, Jordan McCullough O'Quinn, Patty Barrett, Michelle Ulsaker, Megan Patterson and Abby Baine are individuals that upon information and belief, reside in Anderson County.

9.      This Court has jurisdiction over the parties and the subject matter of this action, and venue in this Court is proper.

ELECTRONICALLY FILED - 2024 Jul 31 11:00 AM - ANDERSON - COMMON PLEAS - CASE#2024CP0400995

**Erskine becomes a Charter School "Sponsor" pursuant to S.C. Code Ann. § 59-40-40(1), (4).**

10.     Reason & Republic, Icelaven, Erskine, and CIE are involved in the management and development of charter schools in South Carolina, through the roles and obligations described below.

11.     Under South Carolina's Charter Schools Act (the "Act"), a charter school must operate "by sponsorship of a public school district, the South Carolina Public Charter School District, <u>or a public or independent institution of higher learning</u>…." S.C. Code Ann. § 59-40-40(1) (emphasis added). Further, "Sponsor" is defined to include "…<u>an independent institution of higher learning</u> as defined in Section 59-113-50…" S.C. Code Ann. § 59-40-40(4) (emphasis added).

12.     On or about July 10, 2017, Erskine registered with the South Carolina Department of Education as a charter school sponsor, as defined in the Act (a "Sponsor").

13.     After registering as a Sponsor, Erskine formed CIE to administer its charter school program, with Third-Party Defendant Cameron Runyan ("Runyan") as the Superintendent and Third-Party Defendant Vamshi Rudrapati ("Rudrapati") as the Director. At all times relevant to this Counterclaim, Runyan and Rudrapati acted as agents of CIE and Erskine.

14.     Because South Carolina law requires the Sponsor under these circumstances to be an "independent institution of higher learning," the activities of Erskine in its charter school program are non-delegable, such that all actions of CIE related to this Counterclaim were taken as Erskine's agent and are attributable to Erskine. Erskine, as principal, is responsible for, and vicariously liable for, all actions of CIE in furtherance of Erskine's status as a statutory Sponsor under the Act.

15.     For the purposes of their statutory role as Sponsor, Erskine and CIE are alter egos of one another.

ELECTRONICALLY FILED - 2024 Jul 31 11:00 AM - ANDERSON - COMMON PLEAS - CASE#2024CP0400995

**James Galyean becomes the developer and manager of the Charter Schools**

16.     There are three charter schools relevant to the events alleged in this Counterclaim: Summit Classical Charter School, Inc. ("Summit"), Belton Preparatory Academy ("BPA"), and South Carolina Preparatory Academy ("SC Prep") (collectively, the "Charter Schools").

17.     On or about July 12, 2018, James Galyean ("Galyean") formed Icelaven Development Group, LLC for the purpose of raising investment funds to develop charter schools in South Carolina. At that time, Galyean believed that funds could be needed by charter schools for things like start-up loans or the financing of facilities. Other activities might be supported by non-profit charitable donations.

18.     Galyean had assisted Erskine in becoming a Sponsor and the establishment of BPA and Summit as part of Erskine's initial group of charter schools. In 2018, Galyean and Icelaven directed their efforts towards the advancement and improvement of charter schools in South Carolina. Erskine asked Galyean to promote, assist and improve the success of BPA and Summit.

19.     Galyean had initially intended to help BPA and Summit flourish through a non-profit entity, through charitable fundraising and donations and other methods designed to bring the full benefit of Erskine's educational mission to its charter schools. Galyean and Erskine intended to found an entity that would enable Erskine to promote education excellence in South Carolina while creating a revenue stream to bear the cost of the teachers and other professionals that would be needed to accomplish this goal.

20.     In or about fall of 2019, Runyan and Rudrapati told Galyean that they did not understand how a non-profit, charitable, model would work to help charter schools such as BPA and Summit. Runyan and Rudrapati told Galyean that the model that best fit Erskine's charter school program was the for-profit management company model. Runyan and Rudrapati asked Galyean to form a

ELECTRONICALLY FILED - 2024 Jul 31 11:00 AM - ANDERSON - COMMON PLEAS - CASE#2024CP0400995

management company. Galyean was initially hesitant but ultimately agreed to shift to a management company model. That management company was called Reason & Republic, LLC.

### Erskine College becomes a founding owner of the charter school management company, Reason & Republic

21.    Galyean met with the President and Board of Trustees of Erskine to propose ways that Erskine's educational expertise could be projected in the classrooms of charter schools. Galyean proposed to the Board of Trustees that an investment by Erskine in a newly-formed management company (i.e., Reason & Republic) would create an avenue for Erskine to have a service-providing relationship with charter schools.

22.    The Board of Trustees voted affirmatively for Erskine to become a founding owner of Reason & Republic via an initial $1 million capital contribution. Icelaven was the initial managing member of Reason & Republic. Galyean informed Runyan that Erskine had given funds to Icelaven for this purpose. For the purposes of this counterclaim, all actions that damaged Reason & Republic also foreseeably damaged Icelaven and were directed at Icelaven. Icelaven has standing to bring the same causes of action as Reason & Republic.

23.    A true and accurate copy of Reason & Republic's Operating Agreement is attached to this Answer & Counterclaim as **Exhibit A.** Erskine made several payments spread out over time through 2021, comprising the $1 million investment.

24.    On November 18, 2020, CIE approved amendments to the Charters of the Charter Schools allowing Reason & Republic to serve as the management company for the Charter Schools.

25.    Under these approved amendments, Reason & Republic became the management company for the Charter Schools pursuant to a separate Management Agreement for each ("Management Agreement").

ELECTRONICALLY FILED - 2024 Jul 31 11:00 AM - ANDERSON - COMMON PLEAS - CASE#2024CP0400995

**Erskine asks for its ownership interest in Reason & Republic to be bought out by Icelaven.**

26.     In or about 2021, CIE asked Erskine to unwind Erskine's ownership interest in Reason & Republic. Erskine and Reason & Republic agreed to unwind Erskine's ownership relationship by way of a promissory note. Icelaven would purchase the interest of Erskine over time through annual interest-only payments and a balloon payment in 2027. The parties agreed that the previous payments made to Erskine (to fund dual-enrollment development) would be credited as interest under the new promissory note. The resulting promissory note document was the promissory note (the "Note") attached as Exhibit A to Erskine's Complaint. No other documents or written agreements were executed by the parties. There was an express or implied agreement that Erskine would cooperate during the term of the Note with Reason & Republic to allow Icelaven and Reason & Republic to earn revenues in order to repay Erskine's ownership interest, and not thwart the ability of Reason & Republic and Icelaven to perform its management agreements over the duration of the Note. Through the acts recited herein, Erskine and CIE have breached that agreement.

**Charter Schools thrive under the management of Reason & Republic**

27.     From 2019 through 2023, the Charter Schools thrived under Reason & Republic's management. Under Reason & Republic's leadership, the accomplishments during this time include:

> a)     Students at BPA scored in the top one-percent (1%) in South Carolina for math and the top two-percent (2%) in South Carolina for English. In 2022, BPA's test scores placed sixth (6th) overall in the state out of 666 elementary schools.[2] These achievements were recognized by Runyan and CIE, who stated "Belton Preparatory Academy is an example of what can be accomplished when a school commits itself to the goal of academic excellence and refuses to waiver in that commitment even in the face of great challenges."

---

[2] *See* "School of Excellence", https://beltonprep.us/school-of-excellence  (last accessed July 2, 2024).

ELECTRONICALLY FILED - 2024 Jul 31 11:00 AM - ANDERSON - COMMON PLEAS - CASE#2024CP0400995

b)      Reason & Republic secured a new modular campus for Summit. Galyean served as personal guarantor for the purchase of the modulars.

c)      Reason & Republic secured $20 million in funding for a new facility for BPA via bond financing. To secure this funding, Reason & Republic agreed to subordinate all of its management fees to help pay for the debt service on the bond.

d)      Reason & Republic accomplished a national search to hire a new Head of School for Summit from an inner-city classical school in Washington, D.C. Reason & Republic paid for the recruiting fees and moving expenses associated with this hire.

### Erskine founds Teach Right USA to provide services to charter schools

28.     In January of 2023, Runyan founded Teach Right USA, a service provider to charter schools that is/was staffed with the same personnel that comprised the staff of CIE. Teach Right USA also intended to create charter schools in other states utilizing the personnel that were in the paid employment of CIE. Upon information and belief, South Carolina state funding that was received by CIE pursuant to Erskine's role as a charter school Sponsor was used to fund Teach Right USA, either directly or indirectly.

29.     In October of 2023, Teach Right USA filed a "Letter of Intent" with the Tennessee Department of Education. This "Letter of Intent" functioned as an "Application for Authorization of a Tennessee Public Charter School." This filing is attached hereto as **Exhibit B.** Runyan is listed under "Current Leadership" for Teach Right USA. *See* Ex. B at 5.

30.     Upon information and belief, on or about September 20 & 21, 2023, Runyan, Rudrapati, and other staffers of CIE met with the Chief of Staff for the Governor of Tennessee to discuss the founding of charter schools in Tennessee. Throughout the timeframe relevant to the facts alleged in this Counterclaim, Erskine, CIE and Third-Party Defendant Deidre McCullough ("McCullough") acted with a motive that was not limited to the advancement of charter school education in South Carolina; rather, these Defendants acted with the intent to bring about additional compensatory operations (in South Carolina, Tennessee and perhaps other states) to

ELECTRONICALLY FILED - 2024 Jul 31 11:00 AM - ANDERSON - COMMON PLEAS - CASE#2024CP0400995

bring additional revenue to themselves, and to the detriment of Icelaven and Reason & Republic. These Defendants used state-funded travel to accomplish this purpose.


**<u>Deidre McCullough leaves Reason & Republic to become employed with Teach Right USA</u>**

31.      Galyean had recruited and hired Deidre McCullough to serve as the principal for BPA from 2018-2023.

32.      In the 2022-2023 school year McCullough was an employee of Reason & Republic as principal for BPA. During that school year, the major focus was achieving the necessary enrollment to support the new bond-financed school campus for BPA. McCullough's responsibility was to ensure an enrollment for BPA of at least three-hundred (300) students. Pursuant to this responsibility, McCullough insisted, on the eve of a planned bond-finance closing, that she would use her own "paper system" for reliable enrollment projections instead of the customary and reliable PowerSchool electronic system as instructed by Reason & Republic.

33.      In April of 2023, McCullough represented that she had verified a reliable number of three-hundred twenty-four (324) enrollees for the 2023-2024 school year. Reason & Republic made its budget and payroll plans based on this school population, as well as the sustainable debt-service ability for the new campus. This projection affects the ability of BPA to pay rent based on debt-service payments on the new facility for years to come.

34.      In actual fact, BPA had two-hundred and eighty-seven (287) enrollees for the 2023-2024 school year. This translates to an approximate shortfall of $275,000-$350,000 in state funding. At all times relevant to this Counterclaim, McCullough acted with full knowledge that the funding shortfall for BPA was caused by her failure to report enrollment accurately.

35.    McCullough's failure to follow established enrollment projection procedures caused Reason & Republic to conclude that McCullough did not have a strong skill-set for the administrative and school growth responsibilities that were a part of her job. Reason & Republic moved McCullough to another non-BPA position that allowed her to focus on curriculum and academic achievement. She worked in this role for Reason & Republic into the summer of 2023.

36.    In the summer of 2023, McCullough left Reason & Republic to become employed with Teach Right USA. On the Letter of Intent filed with the State of Tennessee, McCullough was also listed under "Current Leadership" for Teach Right USA. *See* Ex. B at 5.

**Erskine and CIE interfere with the management of BPA**

37.    For BPA's new building, Reason & Republic and the bond underwriters had based ten (10) years of projected debt-service obligations on McCullough's faulty enrollment numbers. Because the actual enrollment numbers were less than McCullough's projections, Reason & Republic instituted several fiscally prudent decisions to help ensure that BPA would have sufficient funds to meet its debt-service obligations for the new building. These decisions included a reduction in payroll by terminating Third-Party Defendants Patty Barrett and Michele Ulsaker in or about October of 2023.

38.    At about this same time, Teach Right USA, McCullough and CIE began to interfere with Reason & Republic's management of the Charter Schools, including BPA. They did so with the purpose of eliminating Reason & Republic as the management company for the Charter Schools.

39.    These efforts included spreading disinformation regarding Reason & Republic's ability to manage BPA and sewing dissension towards Reason & Republic among employees of BPA and the parents of its students, including but not limited to the following acts:

a) Informing BPA's Board members and parents that Reason & Republic was mismanaging funds and providing dishonest enrollment numbers;

b) Demanding to be appointed "fiscal agent" for BPA, and threatening to withhold funding if the Board refused;

c) Creating internet forums (such as but not limited to Facebook groups) designed to publish defamatory statements regarding Reason & Republic's management of BPA;

d) Falsely stating that BPA's enrollment of employees in the South Carolina Public Employee Benefit Authority ("SCPEBA") was "fraud"; and

e) Stating to BPA and its Board that Reason & Republic had selected an auditor that had not been authorized by the State of South Carolina to conduct an audit of BPA. This statement was untrue, as the auditor engaged by Reason & Republic had in fact been approved by the State of South Carolina and CIE.

f) In other particulars to be shown at trial.

40. CIE refused to communicate with Reason & Republic during the 2023-2024 school year, further frustrating Reason & Republic's efforts to effectively manage the Charter Schools, including BPA.

41. CIE acted secretly and swiftly, without allowing for its false statements to be corrected. CIE demanded organizational and financial changes without Reason & Republic's knowledge or consent. For example, in October of 2023, Runyan (on behalf of CIE) approached the BPA Board and demanded that BPA open a new bank account to be overseen by the BPA Board. CIE also asked that BPA allow CIE to perform a forensic audit of BPA's financials, both of which would constitute a breach of BPA's Management Agreement with Reason & Republic. CIE demanded to be immediately appointed as a fiscal agent of BPA.

ELECTRONICALLY FILED - 2024 Jul 31 11:00 AM - ANDERSON - COMMON PLEAS - CASE#2024CP0400995

42.     CIE represented to BPA's Board that the way it was operating its bank accounts with Reason & Republic was in violation of state law. This misrepresentation was based upon the fact that Reason & Republic could process bill payments out of the depository account on behalf of BPA. This practice is common, and CIE took no action based on other examples of the same arrangement for their other charter schools.

43.     CIE stated that it would withhold state funds from BPA if it refused to comply with the aforementioned demands.

44.     At this time, Reason & Republic had secured a bond for the construction of a new facility for BPA. This was an important source of funding, as BPA's lease for its current facility was set to expire and would not be renewed. During a BPA Board Meeting on October 23, 2023, when questioned by the Board about the consequences these organizational changes would have on the bond, CIE demonstrated a lack of concern, and offered wanton and reckless suggestions (such as foregoing the new building and the placing of portable classrooms on land BPA had no right to lease). This statement is a direct example of CIE's reckless motive to induce a breach of the Management Agreement regardless of detrimental consequences to BPA.

45.     At the first meeting where these allegations by CIE had been made (secretly in executive session), CIE demanded that the BPA Board send a letter to Reason & Republic repeating the false allegations it had raised at the October 23, 2023 board meeting and informing Reason & Republic that BPA had appointed CIE as its "fiscal agent." After this meeting, the BPA Board sent an undated letter to Galyean (the "Letter") outlining CIE's concerns and BPA's responsive measures. Upon information and belief, CIE drafted or assisted in drafting this Letter.

46.     The allegations contained in this Letter wrongfully asserted that Reason & Republic was mismanaging BPA and directly causing BPA to breach its Charter Contract with Erskine.

ELECTRONICALLY FILED - 2024 Jul 31 11:00 AM - ANDERSON - COMMON PLEAS - CASE#2024CP0400995

ELECTRONICALLY FILED - 2024 Jul 31 11:00 AM - ANDERSON - COMMON PLEAS - CASE#2024CP0400995

47.    In response to the threats of CIE and without any prior consultation with Reason & Republic, the BPA Board voted to take the following actions at the same first meeting on October 23, 2023:

   a)   Open a separate bank account under the executive control of the BPA Board for the deposit of all funds received from CIE;

   b)   Request CIE temporarily appoint a fiscal agent to oversee the account; and

   c)   Request CIE conduct a forensic audit in relation to the identified problems and concerns.

48.    The Management Agreement between BPA and Reason & Republic provided that all teachers and administrative personnel were to be employees of Reason & Republic. As a previous accommodation to BPA and at the request of its Board, Reason & Republic explored ways to set up SCPEBA health insurance benefits for its teachers. Reason & Republic, for the benefit of BPA and its teachers, agreed to a modified arrangement whereby the workforce would be the formal W-2 employees of the BPA entity, but would be managed, supervised, hired and fired in accordance with the Management Agreement. There was nothing about this arrangement which violated any law or employment principle- it is the essence of a management agreement.

49.    CIE informed BPA's Board and staff that this arrangement constituted "fraud" without factual or legal basis.

50.    CIE's statements about the health insurance plan were reckless and false. During this timeframe, Erskine and CIE conducted a campaign of private phone calls, emails and executive sessions with the Boards of BPA and the other Charter Schools.

51.    This aforementioned campaign was in direct violation of South Carolina's Freedom of Information Act (S.C. Code Ann. § 30-4-10-165) ("FOIA"), which requires that the board of directors for a charter school act only as a whole at a duly noticed meeting, with the opportunity

ELECTRONICALLY FILED - 2024 Jul 31 11:00 AM - ANDERSON - COMMON PLEAS - CASE#2024CP0400995

for the public to observe the communications to the Board and their deliberations. *See* S.C. Code Ann. § 30-4-60. CIE repeatedly requested individual meetings with the board members and the board as a whole, without being willing to state the purpose of the meeting in advance. FOIA requires an agenda be published prior to any board meeting, disclosing the matters that the board might receive information about or take up action upon. *See* S.C. Code Ann. § 30-4-80.

52.     These actions directly interfered with BPA's ability to function as a Charter School, Reason & Republic's ability to manage the school, and in turn, BPA's ability to pay Reason & Republic sums due. To date, Reason & Republic is owed outstanding sums for services it rendered to BPA under the Management Agreement.

53.     Upon information and belief, CIE threatened BPA with withholding state funds and the revocation of its charter if it did not comply with its instructions and get rid of Reason & Republic.

54.     Upon information and belief, CIE asserted that after BPA would get rid of Reason & Republic, CIE could replace any service that Reason & Republic provided, under what CIE referred to as its "shared services model." Under CIE's shared services model, a charter school pays CIE to provide services similar to what a management company could provide. Additionally, CIE acted with the motive of providing additional, compensatory services from Teach Right USA.

55.     The actions taken by BPA were breaches of the Management Agreements, and these breaches were tortuously induced by the Counterclaim Defendants. In addition, Reason & Republic was damaged and continues to suffer ongoing damages and lost future revenues.

### **Erskine interferes with the management of Summit**

56.     Consistent with their motive to destroy Reason & Republic and achieve financial gain, Counterclaim Defendants acted quickly in turning to Summit. Erskine, by and through CIE, engaged in similar tactics with Summit by inducing the Summit Board to get rid of Reason &

ELECTRONICALLY FILED - 2024 Jul 31 11:00 AM - ANDERSON - COMMON PLEAS - CASE#2024CP0400995

Republic. Summit then refused to pay Reason & Republic amounts due for services it rendered under the Management Agreement.

57.     CIE also demanded that it be appointed fiscal agent for Summit, which constituted a direct breach of Summit's Management Agreement with Reason & Republic.

58.     CIE told the Board Chair for Summit that the banking practices of Reason & Republic in managing the school were in violation of state law when in fact, they were not.

59.     Upon information and belief, Third-Party Defendant Patty Barrett informed the Summit Board in December of 2023 that Reason & Republic would be "gone by Christmas."

60.     Upon information and belief, CIE threatened Summit with withholding state funds and the revocation of its charter if it did not comply with its instructions and get rid of Reason & Republic.

61.     Upon information and belief, CIE asserted that after Summit would get rid of Reason & Republic, CIE could replace any service that Reason & Republic provided under what CIE referred to as its "shared services model." Under CIE's shared services model, a charter school pays CIE to provide services similar to what a management company could provide. Additionally, CIE acted with the motive of providing additional, compensatory services from Teach Right USA.

62.     The actions taken by Summit were breaches of the Management Agreements, and the breaches were tortuously induced by the Counterclaim Defendants. In addition, Reason & Republic was damaged and continues to suffer ongoing damagers and lost future revenues.

**Erskine attempts to interfere with the management of SC Prep**

63.     Consistent with their motive to destroy Reason & Republic and achieve financial gain, Counterclaim Defendants acted quickly in turning to SC Prep. On December 19, 2023, Erskine, by and through CIE, informed SC Prep's Board of Directors that it would be unable to execute a letter of good standing for SC Prep. This letter is attached hereto as **Exhibit C.**

17

ELECTRONICALLY FILED - 2024 Jul 31 11:00 AM - ANDERSON - COMMON PLEAS - CASE#2024CP0400995

64.     The December 19, 2023 letter also stated that SC Prep was violating its contract and charter with CIE by paying Reason & Republic management fees that were agreed upon in Reason & Republic's Management Agreement with SC Prep. This letter was sent with the intent to induce SC Prep to get rid of Reason & Republic.

65.     Upon information and belief, CIE asserted that after SC Prep would get rid of Reason & Republic, CIE could replace any service that Reason & Republic provided under what CIE referred to as its "shared services model." Under CIE's shared services model, a charter school pays CIE to provide services similar to what a management company could provide. Additionally, CIE acted with the motive of providing additional, compensatory services from Teach Right USA.

66.     The Counterclaim Defendants' attempts at interfering with SC Prep were unsuccessful and SC Prep did not breach its Management Agreement.

**Erskine insists on early payment for its ownership interest in Reason & Republic, and that it "disassociated" from ownership in 2021**

67.     On October 20, 2023, three (3) days before CIE attended the BPA board meeting and began committing the acts of tortious interference alleged above, Erskine contacted Galyean about collecting on the Note early and otherwise closing out the relationship between Erskine and Reason & Republic.

68.     On December 8, 2023, Erskine, through counsel, informed Reason & Republic and Icelaven that in order to purportedly bring the Note current, Erskine would have to be paid $254,027.16 by December 31, 2023. In this same correspondence, Erskine informed Reason & Republic and Icelaven that it would not recognize a previous $100,000.00 payment made by Reason & Republic and Icelaven as going towards the balance of the Note.

69.     Erskine asserted that Icelaven had verbally and by its actions acknowledged that Erskine was no longer a member of Reason & Republic.

70.     In its December 8, 2023 letter from counsel, Erskine stated that it would be filing a Statement of Disassociation with the South Carolina Secretary of State. To date, Erskine has not done so.

71.     In this same letter, Erskine stated that it would refuse to recognize previous payments made by Icelaven as payment towards the balance on the Note, despite the fact that the $1 million that was subject to the Note was not a new capital contribution, but instead represented Erskine's original investment in Reason & Republic.

72.     Erskine's demand to disassociate from Reason & Republic and demands for early payment for its ownership interest therein directly coincided in time with the new acts of interference by CIE and the actions of Teach Right USA.

73.     As alter-ego and agent of Erskine, CIE is jointly liable with Erskine for the tortious acts and bad faith conduct alleged herein, and the right of setoff pleaded herein, such that CIE is liable for all or part of Erskine's claim against Icelaven.  All other Counterclaim Defendants combined with CIE and Erskine in the tortious acts, bad faith conduct, and defamation alleged herein, such that those parties are jointly and severally liable with CIE for the same acts.  Reason & Republic and Icelaven both assert these claims in their own right, seeking relief jointly and severally and arising out of the same transaction and series of occurrences. Reason & Republic claims an interest relating to the transaction at issue, and its claims present numerous common questions of law and fact.

## FOR A FIRST CAUSE OF ACTION
### (Tortious Interference with Contractual Relations as to all Counterclaim Defendants)

74.     Reason & Republic and Icelaven repeat and reiterate each and every allegation contained in the foregoing paragraphs as if set forth verbatim herein.

ELECTRONICALLY FILED - 2024 Jul 31 11:00 AM - ANDERSON - COMMON PLEAS - CASE#2024CP0400995

ELECTRONICALLY FILED - 2024 Jul 31 11:00 AM - ANDERSON - COMMON PLEAS - CASE#2024CP0400995

75.     This count is against Erksine, CIE, Runyan, Rudrapati, Deidre McCullough, Jordan McCullough O'Quinn, Patty Barrett, Michelle Ulsaker, Megan Patterson and Abby Baine (Collectively the "Counterclaim Defendants").

76.     The Management Agreements between Reason & Republic and the Charter Schools were each binding and enforceable.

77.     Erskine and CIE had knowledge and possession of the Management Agreements.

78.     As Sponsor of the Charter Schools, Erskine and CIE had intimate knowledge of the details and workings of the Management Agreements at issue.

79.     Nevertheless, Counterclaim Defendants intentionally interfered with Reason & Republic's ability to manage the Charter Schools, and directly interfered with the Charter Schools' ability to pay Reason & Republic sums due under the Management Agreements.

80.     Counterclaim Defendants intentionally and tortuously procured the Management Agreements' breach in the particulars contained in this Counterclaim.

81.     The Counterclaim Defendants committed numerous wrongful and tortious acts, including those alleged herein, to induce breaches of the Management Agreements.

82.     CIE is owned, operated and controlled by Erskine and is the alter ego of Erskine. Any acts of CIE in furtherance of Erskine's schemes described above were also actions of Erskine.

83.     CIE and Erskine's actions have resulted in, or will result in, the loss of the Management Agreements and the benefits due thereunder to Reason & Republic.

84.     As a direct and proximate result of the Counterclaim Defendants' 's willful, reckless, and malicious actions, Reason & Republic has suffered damages in an amount of actual, consequential, reputational, and punitive damages to be determined at trial, together with costs and interest, due to

ELECTRONICALLY FILED - 2024 Jul 31 11:00 AM - ANDERSON - COMMON PLEAS - CASE#2024CP0400995

the intentional interferences with Reason and Republic's contractual relations by the Counterclaim Defendants.

## FOR A SECOND CAUSE OF ACTION
### (Breach of Covenant of Good Faith and Fair Dealing as to Erskine)

85.     Reason & Republic and Icelaven repeat and reiterate each and every allegation contained in the foregoing paragraphs as if set forth verbatim herein.

86.     This count is against Erskine only.

87.     The agreement between Erskine and Icelaven under the Note formed a contractual relationship between Erskine and Icelaven.

88.     Reason & Republic was willing and able to perform its obligations.

89.     Erskine, by and through the actions of CIE, prevented Reason & Republic from being able to fulfill its obligations under the Note. Specifically, through CIE's interference with Reason & Republic's management of the Charter Schools and its ability to realize the benefits due under the Management Agreements, Erskine was able to ensure that Reason & Republic would not be able to make payments due under the Note.

90.     Erskine and CIE's actions were in bad faith.

91.     As a direct and proximate result, Reason & Republic suffered damages and is entitled to rescission of the Note and any other agreements with CIE/Erskine, including the Charter Contract and a return of the parties to the status quo ante or in the alternative to an award of damages, offsetting any sums due under the Note.

## FOR A THIRD CAUSE OF ACTION
### (Breach of Fiduciary Duty as to Erskine)

92.      Reason & Republic and Icelaven repeat and reiterate each and every allegation contained in the foregoing paragraphs as if set forth verbatim herein.

ELECTRONICALLY FILED - 2024 Jul 31 11:00 AM - ANDERSON - COMMON PLEAS - CASE#2024CP0400995

93.     This count is against Erskine only.

94.     As owners of a closely held business, a fiduciary duty existed between Erskine, Reason & Republic, and Icelaven.

95.     Erskine, by and through the actions of CIE, breached that fiduciary duty by directly interfering with Icelaven's ability to make payments due under the Note, and by committing the tortious and injurious acts alleged towards Icelaven herein.

96.     Both Reason & Republic and Icelaven have suffered damages in the form of lost potential earning capacity as a result of this conduct.

**FOR A FOURTH CAUSE OF ACTION**
**(Defamation as to Erskine, CIE, Cameron Runyan, Vamshi Rudrapati, Deidre McCullough, Jordan McCullough O'Quinn, Patty Barrett, Michelle Ulsaker, Megan Patterson and Abby Baine)**

97.     Reason & Republic and Icelaven repeat and reiterate each and every allegation contained in the foregoing paragraphs as if set forth verbatim herein.

98.     This count is against Deidre McCullough, Jordan McCullough O'Quinn, Patty Barrett, Michelle Ulsaker, Megan Patterson and Abby Baine, (hereinafter the "Defamation Defendants") and Erskine, CIE, Runyan, and Rudrapati.

99.     The Defamation Defendants, as well as Erskine, CIE, Runyan, and Rudrapati, said, caused to be said, or assisted or caused to be published, false and defamatory statements concerning Reason & Republic's ability to manage the Charter Schools, Reason & Republic's compliance with applicable South Carolina law and Reason & Republic's integrity in handling finances and managing of the Charter Schools.

100.    In 2023, a private Facebook group was organized (or other equivalent web-based platforms) by some or all of the Defamation Defendants to transmit and publish defamatory

ELECTRONICALLY FILED - 2024 Jul 31 11:00 AM - ANDERSON - COMMON PLEAS - CASE#2024CP0400995

statements about Reason & Republic. This group included a combination of members from the staff of Teach Right USA, the staff of Erskine, and certain employees of BPA.

101.    In 2023, Erskine, CIE, Rudrapati and Runyan orchestrated a barrage of communications to Board members at Reason & Republic schools, through private meetings, individual phone calls, emails, and texts, which (1) included defamatory statements about Reason & Republic; (2) threatened to withhold State funding from Reason & Republic schools; and (3) implied that Board members themselves could be in trouble unless they used the services of Erskine in place of Reason & Republic.

102.    False and defamatory statements about the enrollment reports at Belton Prep have been made by Erskine, CIE, Rudrapati, Runyan and/or the Defamation Defendants. These statements expressly stated or implied that Reason & Republic had used inflated or "shady" enrollment projections for the 2023-2024 school year, when in fact Reason & Republic relied upon the firm statement of McCullough that three-hundred twenty-four (324) students were presently enrolled in April of 2023, for the 2023-2024 school year.  As Reason & Republic learned that McCullough's numbers were not accurate, Reason & Republic promptly revised its projection and the corresponding budget.  Thereafter, Reason & Republic's prudent attempts to reduce costs and payroll were slanderously portrayed as caused by "missing money."

103.    False and defamatory statements were made by Erskine, CIE, Rudrapati, Runyan and/or the Defamation Defendants implying that Reason & Republic had "taken money" or that there was "missing money," when in fact no money was "taken" or "missing," and BPA had not even paid all of the rent that it owed for the facility, or all of the sums it owed Reason & Republic.

104.    False and defamatory statements were made by Erskine, CIE, Rudrapati, Runyan and/or the Defamation Defendants implying that BPA's teachers being enrolled in SCPEBA for insurance

ELECTRONICALLY FILED - 2024 Jul 31 11:00 AM - ANDERSON - COMMON PLEAS - CASE#2024CP0400995

benefits was "fraud" or improper, when in fact this decision was made by the Boards of the Charter Schools, and Reason & Republic accommodated this decision and resulting employment structure for the greater benefit of the teachers.

105.    These statements were published to the Boards of the Charter Schools and other members of the public without privilege.

106.    This publication was made directly by Erskine, CIE, Rudrapati, Runyan and/or the Defamation Defendants

107.    These statements caused actual harm to Reason & Republic and Icelaven.

**FOR A FIFTH CAUSE OF ACTION**
**(Violation of the South Carolina Unfair Trade Practices Act as to Erskine and CIE)**

108.    Reason & Republic and Icelaven repeat and reiterate each and every allegation contained in the foregoing paragraphs as if set forth verbatim herein.

109.    This count is against Erskine and CIE.

110.    Erskine, by and through CIE, engaged in unfair and deceptive practices through all of the conduct alleged herein.

111.    This deceptive practice affected the public interest, as Erskine, as a continuing Sponsor of charter schools in South Carolina, has the potential to engage in this conduct in the future. The acts complained of have the potential for repetition.

112.    Reason & Republic suffered damages in the form of the loss of the Management Agreements as a result of this conduct.

**FOR A SIXTH CAUSE OF ACTION**
**(Expulsion of Erskine as a Member of Reason & Republic)**

91.     Reason & Republic and Icelaven repeat and reiterate each and every allegation contained in the foregoing paragraphs as if set forth verbatim herein.

ELECTRONICALLY FILED - 2024 Jul 31 11:00 AM - ANDERSON - COMMON PLEAS - CASE#2024CP0400995

92.     This count is against Erskine only.

93.     Section 7.3(a)(2) of the Operating Agreement provides the right of any Member to seek another Member's expulsion from the LLC by judicial determination in accordance with S.C. Code Ann. § 33-44-601(6) because the Member:  Engaged in wrongful conduct that adversely and materially affected the company's business;  willfully or persistently committed a material breach of the operating agreement or of a duty owed to the company or the other members under Section 33-44-409; or engaged in conduct relating to the company's business which makes it not reasonably practicable to carry on the business with the member.

94.     Based on the foregoing allegations, Erskine has engaged in wrongful conduct that adversely and materially affects Icelaven's interests and Reason and Republic's business in that Erskine has not worked to advance the interests of Reason & Republic, but has instead advanced the efforts of Teach Right USA.

95.     Erskine has willfully and persistently committed a material breach of duties owed under S.C. Code Ann. § 33-44-409 in that it has engaged in grossly negligent and reckless conduct as well as intentional misconduct.

96.     Erskine has engaged in conduct relating to Reason & Republic's business which makes it not reasonably practicable to carry on the business with Erskine as a Member.

97.     Reason & Republic and Icelaven seek a determination from this Court that Erskine is expelled from Reason & Republic pursuant to S.C. Code Ann. § 33-44-601(6).

98.     Reason & Republic and Icelaven seek damages against Erskine for the acts complained of herein and damages caused by the member being disassociated pursuant to S.C. Code Ann. § 33-44-601(c).

ELECTRONICALLY FILED - 2024 Jul 31 11:00 AM - ANDERSON - COMMON PLEAS - CASE#2024CP0400995

## FOR A SEVENTH CAUSE OF ACTION
### (Breach of Contract as to Erskine)

99.     Reason & Republic and Icelaven repeat and reiterate each and every allegation contained in the foregoing paragraphs as if set forth verbatim herein.

100.    The Operating Agreement is a binding contract. *Clary v. Borrell*, 398 S.C. 287, 297, 727 S.E.2d 773, 778 (Ct. App. 2012).

101.    The Operating Agreement requires that the Members perform certain actions and take on specific responsibilities.

102.    Erskine breached the Operating Agreement by failing to abide by the provisions and responsibilities agreed to by the parties, which is demonstrated by the numerous acts recited herein and as alleged in the above Paragraphs.

103.    Erskine's breach has consequently and proximately caused damage to Reason & Republic and Icelaven in an amount to be determined at trial.

## FOR AN EIGHTH CAUSE OF ACTION
### (Civil Conspiracy as to the Counterclaim Defendants)

104.    Reason & Republic and Icelaven repeat and reiterate each and every allegation contained in the foregoing paragraphs as if set forth verbatim herein.

105.    This count is to all Counterclaim Defendants.

106.    The Counterclaim Defendants, with the intent to injure Reason & Republic through procuring the breach of the Management Agreements, acted in combination through by spreading disinformation regarding Reason & Republic's management of the Charter Schools and its ability to manage the Charter Schools in the future. They acted in concert, bringing about events that could have only been accomplished by working together, close in time.

ELECTRONICALLY FILED - 2024 Jul 31 11:00 AM - ANDERSON - COMMON PLEAS - CASE#2024CP0400995

107.    This combination of acts resulted in actual damage to Reason & Republic and Icelaven in the form of lost past and future revenue, and in other particulars to be shown at trial.

### FOR A NINTH CAUSE OF ACTION
**(Violations of Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c) as to Erskine, CIE, Runyan, and Rudrapati)**

108.    Reason & Republic and Icelaven repeat and reiterate each and every allegation contained in the foregoing paragraphs as if set forth verbatim herein.

109.    This count is against Erskine, CIE, Runyan, and Rudrapati.

110.    In 2022 and 2023, all Counterclaim Defendants formed an association-in-fact enterprise, described here as the "Erskine Enterprise," within the meaning of 18 U.S.C. § 1961(4). The Erskine Enterprise consists of a group of persons associated together for the common purpose of intentionally and willfully injuring Reason & Republic and Icelaven, and benefiting the Enterprise's participants by means of extortion and materially false representations.

111.    Specifically, the purpose of the Enterprise was to seek additional compensatory operations, including via Erskine's "shared services model" and by promoting an education management organization that would compete with Reason & Republic. That entity, which is part of the Enterprise, is Teach Right USA.

112.    The Erskine Enterprise is an enterprise engaged in and whose activities affect interstate commerce, as it oversees school entities that receive money and it operates in multiple States. In furtherance of the extortionate scheme, members of the Enterprise have made payments to one another, and in doing so, passed money through the United States' banking system.

113.    Counterclaim Defendants are associated with the Enterprise, and Erksine, CIE, Runyan, and Rudrapati exercise a managerial and directing role in the Enterprise's affairs.

ELECTRONICALLY FILED - 2024 Jul 31 11:00 AM - ANDERSON - COMMON PLEAS - CASE#2024CP0400995

114.    Counterclaim Defendants agreed to and did conduct and participate in the conduct of the Erskine Enterprise's affairs through a pattern of racketeering activity and for the unlawful purpose of injuring Reason & Republic and Icelaven and benefiting themselves.

115.    Pursuant to and in furtherance of their fraudulent scheme, Counterclaim Defendants committed multiple related acts of extortion via materially false representations, including interfering with Reason & Republic's management of the Charter Schools by repeatedly giving false information to those Schools about Reason & Republic's operations and threatening to withhold state funds if the Schools did not accede to Defendants' demands to alter or abandon their relationships with Reason & Republic—to Erskine's and CIE's advantage.

116.    The acts set forth above are racketeering activities because they violate, *inter alia*, 18 U.S.C. § 1951 (Hobbs Act) and S.C. Code Ann. § 16-17-640. *See* 18 U.S.C. § 1961(A) (defining "racketeering activity").

117.    The acts set forth above constitute violations of the Hobbs Act as acts of extortion and attempts and conspiracies to extort.

  a.  First, they interfere with interstate commerce, as Counterclaim Defendants and Reason & Republic and Icelaven are involved with the provision of educational resources, which involves transactions in interstate commerce.

  b.  Second, they involve property within the meaning of the Hobbs Act, as Counterclaim Plaintiffs' right to conduct their business and existing contracts are considered property.

  c.  Third, Counterclaim Defendants have obtained, attempted to obtain, or conspired to obtain portions of this property through the course of conduct described above.

ELECTRONICALLY FILED - 2024 Jul 31 11:00 AM - ANDERSON - COMMON PLEAS - CASE#2024CP0400995

d.  Fourth, Counterclaim Defendants have obtained, attempted to obtain, or conspired to obtain this property with the consent of their targets, the Charter Schools.

e.  Fifth, this consent was induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right. Counterclaim Defendants used their putative state-derived control over charter schools (S.C. Code § 59-40-40(4)) to threaten the Charter Schools with financial consequences and loss of licensing in order that they would abandon their agreements with Reason & Republic and instead utilize entities associated with the Erskine Enterprise for school services.

f.  Sixth, this conduct was willful and intentional, as Counterclaim Defendants sought their own financial benefit and advantage.

g.  Seventh, this conduct harmed Reason & Republic and Icelaven, as it deprived them of their valid business arrangements, imposed severe reputational harms, and strengthened a business competitor.

118.    The acts set forth above also constitute violations of S.C. Code Ann. § 16-17-640, as Counterclaim Defendants repeatedly threatened and implemented a false campaign accusing Reason & Republic of unethical conduct and business misdeeds, in numerous verbal, written and electronic communications, with the intent to extort money or other things of value from the Charter Schools.

119.    The acts set forth above also constitute violations of 18 U.S.C. § 1952(a), as Counterclaim Defendants traveled in interstate commerce or used facilities in interstate commerce (including but not limited to wire, telephone and internet communications), with the intent to promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of unlawful activities including extortion in violation of both state and federal law.

ELECTRONICALLY FILED - 2024 Jul 31 11:00 AM - ANDERSON - COMMON PLEAS - CASE#2024CP0400995

120.    The acts set forth above constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

121.    Erskine, CIE, Runyan, and Rudrapati have directly and indirectly conducted and participated in the conduct of the Erskine Enterprise's affairs through the pattern of racketeering and activity described above, in violation of 18 U.S.C. § 1962(c). The racketeering activity described above employs a common, ongoing course of conduct intended to pressure schools into ending their relationship with Reason & Republic and instead providing financial advantages to Counterclaim Defendants. The racketeering activity is related, having (1) common participants, (2) the same victim, and (3) the same purpose and result of benefiting the Counterclaim Defendants or co-conspirators at the expense of Reason & Republic. The predicate acts constituting a pattern of racketeering activity also are interrelated, as each of the foregoing acts can be traced to a coordinated campaign against Reason & Republic.

122.    Accordingly, Erskine, CIE, Runyan, and Rudrapati have violated 18 U.S.C. § 1962(c).

123.    Counterclaim Defendants' racketeering activities and violations of 18 U.S.C. § 1962(c) have directly and proximately caused economic injuries to Reason & Republic's and Icelaven's business, property, and reputation, as well as other injuries and damages to be proven at trial. Further, Counterclaim Defendants' racketeering activity continues, as do Reason & Republic's and Icelaven's injuries. The Erskine Enterprise benefited from these racketeering activities by harming a competitor and obtaining financial benefits.

124.    These violations entitle Reason & Republic and Icelaven to actual damages, treble damages, attorney's fees, an injunction against Counterclaim Defendants' unlawful activities, and divestment of Counterclaim Defendants from their unlawful Enterprise. *See* 18 U.S.C. § 1964.

ELECTRONICALLY FILED - 2024 Jul 31 11:00 AM - ANDERSON - COMMON PLEAS - CASE#2024CP0400995

## FOR A TENTH CAUSE OF ACTION
### (Violations of Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(d))

125.    Reason & Republic and Icelaven repeat and reiterate each and every allegation contained in the foregoing paragraphs as if set forth verbatim herein.

126.    This count is against all Counterclaim Defendants.

127.    All Counterclaim Defendants agreed and conspired to participate in, or to facilitate the commission of, predicate acts as stated above, and agreed and conspired to facilitate the acts leading to the substantive offense of conducting the affairs of the enterprise through a pattern of racketeering activity, which included the repeated acts alleged above, in violation of 18 U.S.C. § 1962(d).

128.    The object of this conspiracy has been and is to conduct, promote, or participate in, directly or indirectly, the affairs of the Erskine Enterprise described above through a pattern of racketeering activity.

129.    As detailed above, Counterclaim Defendants have engaged in numerous overt and predicate racketeering acts in furtherance of the conspiracy.

130.    The nature of the above-described scheme gives rise to an inference that the members of the Erskine Enterprise not only agreed to the objective of a RICO conspiracy under 18 U.S.C. § 1962(d) by conspiring to violate 18 U.S.C. § 1962(c), but also that they were aware that their ongoing extortionate acts have been and are part of an overall pattern of racketeering activity and had knowledge of the essential nature of the plan.

131.    Counterclaim Defendants' racketeering activities and violations of 18 U.S.C. § 1962(d) have directly and proximately caused economic injuries to Reason & Republic's and Icelaven's business, property, and reputation, as well as other injuries and damages to be proven at trial. Further, Counterclaim Defendants' conspiracy and racketeering activities continue, as do Reason

ELECTRONICALLY FILED - 2024 Jul 31 11:00 AM - ANDERSON - COMMON PLEAS - CASE#2024CP0400995

& Republic's and Icelaven's injuries. The Erskine Enterprise benefited from these racketeering activities by harming a competitor and obtaining financial benefits.

132. These violations entitle Reason & Republic and Icelaven to actual damages, treble damages, attorney's fees, an injunction against Counterclaim Defendants' unlawful activities, and divestment of Counterclaim Defendants from their unlawful Enterprise. *See* 18 U.S.C. § 1964.

WHEREFORE, Reason & Republic and Icelaven pray that a jury trial be had on all issues so triable and that the Court enter judgment in their favor as follows:

a.     That Erskine's claims against Icelaven be dismissed with prejudice;

b.     That Reason & Republic join this action by permissive joinder pursuant to Rule 20 SCRCP, or in the alternative by intervention pursuant to Rule 24 SCRCP, and that Reason & Republic and Icelaven recover from all Third-Party Defendants, an amount of actual, trebled, and punitive damages to be determined by a jury;

c.     That Reason & Republic and Icelaven recover from all Third-Party Defendants, the costs of this action, including litigation costs, court costs and attorney's fees; and

d.     For such other and further relief as the Honorable Court deems just and proper.

**HAYNSWORTH SINKLER BOYD, P.A**.

*s/J.W. Matthews III*

J.W. Matthews III, S.C. Bar No. 68581
William D. Smith, S.C. Bar. No. 105860
ONE North Main Street, 2nd Floor (29601)
Post Office Box 2048
Greenville, SC 29602
Tel: (864) 240-3200
Fax: (864) 240-3300
Email: jmatthews@hsblawfirm.com
Email: wsmith@hsblawfirm.com

Christopher E. Mills, S.C. Bar No. 101050
Spero Law LLC

ELECTRONICALLY FILED - 2024 Jul 31 11:00 AM - ANDERSON - COMMON PLEAS - CASE#2024CP0400995

557 East Bay Street #22251
Charleston, SC 29413
Tel: (843) 606-0640
Email: cmills@spero.law

*Attorneys for Defendant and Third-Party Plaintiffs*

July 31, 2024
Greenville, South Carolina